IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF JESUS MALAVE MORALES,** **Deceased,** **by John R. Harrison, Administrator,** c/o Friedman & Gilbert, 55 Public Square, Suite 1055 Cleveland, Ohio 44113<br><br>    Plaintiff,<br><br>-vs-<br><br>**CITY OF CLEVELAND, OHIO,** **KRISTINA VARGO #5580,** **STEPHENS #5531,** **TIMOTHY HOLT #5715,** **GEORGE BROWN #5654,** **KEVIN BOLL #5722,** **ALAN FURTADO,** **ELIZABETH HESTER,** **STOTTNER,** **JOSEPH RAUCHER, and** **UNNAMED DEFENDANTS 1-10,** c/o City of Cleveland Law Department 601 Lakeside Avenue, #106 Cleveland, Ohio 44114,<br><br>    Defendants. | CASE NO.:<br><br>JUDGE:<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.     Jesus Malave Morales, a thirty-four-year-old Puerto Rican man, was detained in the City of Cleveland's downtown Jail. When he arrived at the Jail in the early morning hours of October 5, 2017, correctional staff failed to conduct medical or mental health screenings and did not ask Jesus about mental health issues or suicide risk. Shortly after being locked in his cell, Jesus hanged himself. Other prisoners were watching as Jesus tied his blanket to the cell bars and

1

wrapped the blanket around his neck. They screamed out to corrections officers for help. No one responded. Several minutes later, corrections officers on cleaning duty found Jesus on the ground, against his cell door, with the blanket around his neck. Jesus was barely breathing. He was transported to a hospital, where he died six days later, on October 11, 2017.

2. The City of Cleveland is responsible for the policies, practices, and customs of the downtown Jail, known as the Central Processing Unit ("Cleveland Jail" or "Jail"). Defendant City of Cleveland is also responsible for ensuring that all of its facilities, including the Cleveland Jail, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care. Likewise, the City of Cleveland is responsible for ensuring that its staff, including Jail staff, are adequately trained and supervised to carry out their duties in a way that does not violate the fundamental rights of prisoners.

3. This is a civil rights and wrongful death action seeking monetary damages on behalf of the Estate of Jesus Malave Morales.

### JURISDICTION AND VENUE

4. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C §1983 et seq; 42 U.S.C. § 12131 (the "Americans with Disabilities Act"); §504 of the Rehabilitation Act of 1973 (§504); 29 U.S.C. § 794; Judicial Code, 28 U.S.C. §§1331 and 1343(a); and the Constitution of the United States.

5. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiff's claim also occurred in this judicial district.

**PARTIES**

7. John R. Harrison was appointed Administrator of the Estate of Jesus Malave Morales, deceased, by the Probate Court of Cuyahoga County, Ohio, Case No. 2019 EST 246959, on September 26, 2019.

8. Decedent Jesus Malave Morales was, at all times relevant to the allegations made in this complaint, a resident of the City of Cleveland in Cuyahoga County, Ohio.

9. Defendant Kristina Vargo #5580 was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

10. Defendant Stephens #5531 was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of their employment and under the color of state law. They are sued in their individual capacity.

11. Defendant Timothy Holt #5715 was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

12. Defendant George Brown #5654 was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

13. Defendant Kevin Boll #5722 was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

14. Defendant Alan Furtado was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

15. Defendant Elizabeth Hester was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

16. Defendant Stottner was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of their employment and under the color of state law. They are sued in their individual capacity.

17. Defendant Joseph Raucher, was, at all times relevant to the allegations made in this complaint, a duly appointed officer employed by the City of Cleveland, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

18. Unnamed Defendants 1-10 were, at all times relevant to the allegations made in this complaint, duly appointed officers employed by the City of Cleveland, acting within the scope of their employment and under the color of state law. They are sued in their individual capacities.

19. Defendant City of Cleveland was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant City of Cleveland is a "person" under 42 U.S.C. § 1983.

20. Defendant City of Cleveland is the employer and principal of the individual Defendants and is responsible for the policies, practices, and customs of the downtown Jail, known as the Central Processing Unit ("Cleveland Jail"). Defendant City of Cleveland is responsible for

ensuring that all of its facilities, including the Cleveland Jail, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

21. Defendant City of Cleveland is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1).

**FACTS**

22. Jesus Malave Morales was arrested in the early morning hours of October 5, 2017, after an altercation with his girlfriend by Cleveland Division of Police (CDP) officers P. Singh #1381 and R. Cygan #1329.

23. Jesus was taken downtown to the City of Cleveland's Central Processing Unit ("Cleveland Jail" or "Jail").

24. When Jesus arrived at the Cleveland Jail at approximately 5:15 AM, Defendants Furtado and Hester were the supervisors on duty.

25. Once at the Jail, Jesus was subjected to the Jail's booking process.

26. Defendants, including but not limited to Officers Kristina Vargo #5580 and/or Stephens #5531 and/or Unnamed Defendants 1-10, completed an abbreviated booking and screening process.

27. Defendants failed to complete the entirety of the Cleveland Jail's booking form: they specifically failed to screen for and/or document information concerning Jesus' medical and mental health histories and his current acute distress and suicidal ideation.

28. Defendants failed to document their own "Officer/Jailer Observations," including, *inter alia*, whether Jesus appeared emotionally upset, had a history of suicide attempts, or demonstrated any risk of suicide. Defendants failed to document any medical or mental health caution on Jesus' booking documentation and other Jail paperwork.

29. However, Jesus did have a history of attempting suicide. He also had a history of untreated mental health issues. Jesus had also been distraught since the death of his mother: her death caused him to feel that he did not have a purpose in life.

30. Upon his arrival at the Jail, Jesus was further distraught over the altercation with his girlfriend and being taken into custody at the time of his arrest and booking into the Cleveland Jail.

31. None of the above information about Jesus Malave Morales' severe psychological symptoms, including his current mental health and state of mind, was documented in Jail booking documentation or other paperwork.

32. When Jesus arrived at the Jail, he also interacted with Defendant George Brown #5654, who presented him with a Detainee Rules and Regulations form.

33. Defendant Brown, too, failed to document Jesus' severe psychological symptoms, including his current mental health and state of mind, in Jail booking documentation or other paperwork.

34. After this abbreviated booking process, Jesus was transported to the phone call cell. After some time in the phone call cell, Defendant Timothy Holt #5715 interacted with Jesus. Holt removed Jesus and moved him to Cell #8.

35. Defendant Holt also failed to document Jesus' severe psychological symptoms, including his current mental health and state of mind, in Jail booking documentation or other paperwork.

36. Defendant supervisors Furtado and Hester failed to supervise the officers on shift under their direction, and allowed their supervisees to fail to fully complete the booking process

6

and to fail to document Jesus' severe psychological symptoms, including his current mental health and state of mind, in Jail booking documentation or other paperwork.

37. When the supervisory shift neared its end, Defendant supervisors Furtado and Hester failed to document or disclose to Defendants Lieutenants Stottner and Joseph Raucher, who would supervise the next shift, Jesus' severe psychological symptoms, including his current mental health and state of mind, or that Jesus presented a suicide risk.

38. Upon information and belief, Defendants failed to perform a proper screening, evaluation, assessment, and medical intake of Jesus to evaluate and access his medical and mental health status and the level of supervision required to ensure his safety while in custody prior to placing him in a cell at the Cleveland Jail.

39. All Defendants knew or should have known that Jesus's mental state placed him at a high risk level for suicide.

40. Despite Defendants' knowledge of Jesus Malave Morales' despondency and risk of injury, they were deliberately indifferent to his risk of suicide.

41. Defendants' failures to document Jesus' history of mental health issues, suicide attempts, and distraught state of mind were compounded by their additional failures to take any precautions or safeguards to protect Jesus while in the custody of the City of Cleveland at the Jail.

42. Defendants failed to place Jesus on suicide watch or special watch protocols.

43. Defendants failed to house Jesus in a cell with suicide precautions.

44. Defendants failed to summon mental health professionals to provide care for Jesus.

45. Defendants failed to monitor Jesus or to conduct timely rounds of the cellblock where he was housed.

46. All of these failures constituted deliberate indifference to Jesus Malave Morales' serious medical needs, and left Jesus at serious risk of physical harm.

47. Once Jesus was placed into Cell#8, the risk of harm ripened into actual harm.

48. Other prisoners were housed in the cell block with Jesus. One of those prisoners was housed in Cell #15, on the opposite side of the cell block form Cell #8 where Jesus was housed.

49. The prisoner saw Jesus tie his blanket to a bar in his cell, and saw Jesus twisting his blanket as he moved toward the back of the cell. The prisoner saw Jesus wrap the blanket around his neck and spin toward the front of his cell until his back was against the cell door. The prisoner then saw Jesus lower himself to the floor, with the blanket wrapped tightly around his neck.

50. The prisoner began yelling for corrections officers to come to the area. He could see Jesus having difficulty breathing.

51. Defendants did not come.

52. The prisoner continued screaming for corrections officers to help Jesus for several minutes. At least one other prisoner joined him, also yelling for help.

53. Defendants did not come.

54. As these prisoners were yelling for help, Defendant Officers George Brown #5654 and Kevin Boll #5722 began cleaning the Jail in the cellblock area containing Cells #1 through #20, including Jesus' Cell #8.

55. Defendants Brown and Boll moved toward Cell #8, and continued cleaning—but did not respond to the prisoners' cries for help.

56. Defendant Brown eventually arrived at Cell #8, and he untied the blanket from the cell bars. He did not immediately call for help.

57. Defendant Boll continued cleaning, and eventually made his way to Cell #8.

58. Defendants Brown and Boll finally entered the cell. Defendants then entered the cell and pulled Jesus halfway out, laying him on the ground on his back.

59. Defendant Officer Holt arrived in the cellblock.

60. Other Defendants and officers joined them in the cellblock area.

61. Defendants attempted several times to use an AED machine to revive Jesus, but the machine did not deliver a shock.

62. EMS arrived and transported Jesus to St. Vincent Charity Hospital.

63. Defendants sealed off Cell #8 as a potential crime scene until investigators arrived.

64. Despite recognizing that Cell #8 and its contents were a potential crime scene, instead of collecting the blanket Jesus used to hang himself as evidence for the investigation into Jesus' death, Defendants put the blanket in the laundry bin with all other dirty Jail blankets. The blanket was therefore unavailable as evidence for the investigation in this case.

65. Prior to Jesus hanging himself, Defendants knew or should have known that Jesus was at a substantial risk of serious harm, and yet they consciously disregarded that risk.

66. When Jesus began the process of hanging himself, and other prisoners began screaming for help, Defendants ignored their cries and consciously disregarded actual serious harm to Jesus Malave Morales.

67. When Defendants Brown and Boll first found Jesus hanging in his cell, they did not leap into immediate action to initiate life-saving actions.

68. Defendants repeatedly failed to offer or procure appropriate intervention and precautions for Jesus' serious, immediate, and life-threatening conditions.

69. Defendants jointly agreed and/or conspired with one another, and others, to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version of the events to certain superiors and the public in order to cover up their own misconduct.

70. All of the actions of the Defendants and their named and unnamed co-conspirators, as set forth above and below, were taken jointly, in concert, and with shared intent.

71. All of the Defendants had a duty to care for and protect Jesus Malave Morales while he was in their custody and they failed to do so.

72. Defendants were deliberately indifferent to protecting Jesus Malave Morales from harm and failed to prevent said harm, further failed to provide urgently needed medical care and their conduct was unreasonable in failing to protect Jesus Malave Morales from harm.

73. Upon information and belief, none of the Defendants have been disciplined in any way as a result of the conduct, acts, or omissions described in this Complaint.

74. After EMS transported him out of the jail, Jesus Malave Morales arrived at St. Vincent Charity Hospital. Jesus remained in intensive care for six days.

75. On October 11, 2017, Jesus Malave Morales died of complications due to near hanging.

76. As a direct and proximate result of the acts set forth in this complaint, Jesus Malave Morales sustained pain and suffering prior to his death.

77. When he died, Jesus left behind six brothers and sisters and three children.

78. As a direct and proximate result of these Defendants' actions and the wrongful death of Jesus Malave Morales, as detailed above, Jesus Malave Morales and his survivors and/or heirs and family have suffered damages, *inter alia*, injury, pain, distress, loss of love and affection,

loss of his support, services, and society, including loss of companionship and consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, pecuniary losses, and other injuries as a result of his death and the continuing loss of his life.

79. As a further direct and proximate result of the wrongful death of Jesus Malave Morales, the Decedent's survivors and/or heirs have suffered damages, including but not limited to, grief, depression, and severe emotional distress.

**FIRST CLAIM FOR RELIEF**
**5th and 14th Amendment Due Process Claim –**
**Against Defendants Vargo, Stephens, Brown, Holt, Boll,**
**Furtado, Hester, Stottner, Raucher, and Unnamed Defendants 1-10**

80. All of the foregoing paragraphs are incorporated as though fully set forth here.

81. Plaintiff alleges an action pursuant to the Fifth and Fourteenth Amendments against the individual Defendants.

82. Jesus Malave Morales was in a special relationship with the Defendants, within the meaning of the case law interpreting 42 U.S.C. §1983 and Fifth Amendment, which guarantees equal protection of the laws and prohibits any person acting under color of law, from subjecting any person in custody to punitive conditions of confinement without due process of law.

83. Defendants, acting under color of law, intentionally and with conscious, callous, and unreasonable indifference deprived Jesus Malave Morales of his constitutional rights to due process and equal protection.

84. The Defendants' above-described conduct, acts and/or omissions constitute deliberate indifference to Jesus Malave Morales' serious medical needs, was unreasonable and violated his rights to due process of law and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution, and violated 42 U.S.C. §1983.

85. Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Jesus Malave Morales' Fifth Amendment and Fourteenth Amendment rights, his pain, mental suffering, anguish, and other injuries.

86. Defendants are jointly and severally liable for this conduct.

## SECOND CLAIM FOR RELIEF
### ADA and §504 Claim -
### Against Defendant City of Cleveland

87. All of the foregoing paragraphs are incorporated as though fully set forth here.

88. Defendant City of Cleveland, has been, and is, a recipient of federal funds, and is covered by the mandate of Section 504 of the 1973 Rehabilitation Act (29 U.S.C. § 794). Section 504 requires that persons with disabilities be reasonably accommodated in their facilities, program activities, and services and reasonably modify such facilities, services, and programs to accomplish this purpose.

89. Further, Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to the City of Cleveland and has essentially the same mandate as that expressed in §504.

90. The Cleveland Jail is a facility, and its operation comprises a program and service, for §504 and Title II purposes.

91. Defendants failed and refused to reasonably accommodate Jesus Malave Morales' mental disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate his disability, in violation of Title II of the ADA and/or §504, when he was in their custody.

92. Defendants' failures cost Jesus Malave Morales his life, and the violations of the ADA and/or §504 are the proximate cause of his death and the resulting damage to his estate.

93. Plaintiff's Estate is entitled to recover for those damages sustained as described in this Complaint as a result of Defendants' violations of the ADA and §504 which caused his death.

94. Defendants are jointly and severally liable for this conduct.

**THIRD CLAIM FOR RELIEF**
**§ 1983 *Monell* claim –**
**Against Defendant City of Cleveland**

95. All of the foregoing paragraphs are incorporated as though fully set forth here.

96. The actions of the Defendants were done pursuant to one or more interrelated de facto as well as explicit policies, practices and/or customs of the Defendant City of Cleveland, its Jail, and its agents and/or officials.

97. Defendant City of Cleveland, acting at the level of official policy, practice, and custom, with deliberate, callous, conscious and unreasonable indifference to Jesus Malave Morales' constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint the Defendant City of Cleveland, its Jail, its agents and/or officials had interrelated de facto policies, practices, and customs which include, *inter alia*,

   a) failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control corrections officers and health care providers; failing to appropriately and timely identify serious mental health medical issues and needs of prisoners like Jesus Malave Morales;

   b) failing to appropriately recognize suicidal tendencies in prisoners, like Jesus Malave Morales, despite clear indications of such tendencies;

   c) failing to timely refer prisoners like Jesus Malave Morales for appropriate mental health medical services, despite clear indications of serious need;

d) failing to place prisoners like Jesus Malave Morales on suicide watch even though known to be suicidal or presenting evidence of suicidal ideation;

e) failing and refusing to adequately and timely communicate critical information regarding mental health, including risk of suicide;

f) failing and refusing to provide adequate care, treatment and/or supervision for potentially suicidal prisoners like Jesus Malave Morales;

g) failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of prisoners like Jesus Malave Morales;

h) failing and refusing to correct, discipline, and follow up on deficiencies noted in care, treatment and/or supervision of prisoners; and/or

i) possessing knowledge of deficiencies in the policies, practices, customs and procedures concerning prisoners, and approving and/or deliberately turning a blind eye to these deficiencies.

98. In particular, corrections officers, health care providers, and other employees are not properly trained in how to intake, screen, identify, refer and/or handle prisoners with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of prisoners.

99. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged, inter alia, the failure to adequately observe prisoners to identify problematic behavior and interrupt any suicide attempt, the failure to adequately screen prisoners for mental health status and suicidal tendencies, the failure to provide preventative health care to avoid suicide, and the failure to provide adequate resuscitation equipment and training.

100. Further, the constitutional violations and damages to Jesus Malave Morales that occurred as described herein were directly and proximately caused by: the unofficial and/or official, tacit and/or expressed; and otherwise unconstitutional policies of authorized policy makers of the Defendants, who deliberately ignored subjecting prisoners to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, and deliberately failed to supervise and control corrections officers and health care providers so as to prevent violations of prisoners' rights.

101. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and, encouraged the Defendants to commit the aforesaid acts against Jesus Malave Morales and therefore acted as direct and proximate causes of said constitutional violations, and resulting injuries.

102. The foregoing policies, practices, customs and omissions, maintained by the City of Cleveland violated Jesus Malave Morales' rights to due process under the Fourteenth and Fifth Amendments.

**FOURTH CLAIM FOR RELIEF**
**State Law Claim for Negligence - Willful, Wanton and Reckless Conduct**
**Against Defendants Vargo, Stephens, Brown, Holt, Boll,**
**Furtado, Hester, Stottner, Raucher, and Unnamed Defendants 1-10**

103. All of the foregoing paragraphs are incorporated as though fully set forth here.

104. Defendants acted negligently when they violated their duty to exercise due care for Jesus Malave Morales.

105. Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as correctional officers at the Cleveland Jail.

106. Defendants' misconduct directly and proximately caused the injuries and damages suffered by Jesus Malave Morales and his Estate as described above.

107. Defendants are jointly and severally liable for this conduct.

### FIFTH CLAIM FOR RELIEF
### State Law Claim for Wrongful Death Pursuant to Ohio R.C. § 2125.02

108. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

109. Jesus Malave Morales is survived by his heirs who have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

110. The wrongful death of Jesus Malave Morales was proximately caused by the neglect, default, and/or willful, wanton, and/or reckless conduct of the Defendants.

111. The Defendant officers otherwise acted negligently, willfully, wantonly, and/or recklessly and with indifference in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of Jesus Malave Morales and his Estate.

112. As a direct and proximate result of the actions of the defendants in this complaint, Jesus Malave Morales died on October 11, 2017, subjecting the Defendants to liability pursuant to Ohio R.C. § 2125.02.

### SIXTH CLAIM FOR RELIEF
### Survivorship Action

113. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

114. Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, Jesus Malave Morales was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

115. The Defendant officers owed Jesus Malave Morales a duty of care, they breached that duty, and their breach of duty was the proximate cause of Jesus Malave Morales' death.

116. The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgement be entered in his favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiff's decedent's rights and his wrongful death;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and/or reckless conduct;

C. Attorneys' fees and the costs of this action pursuant to law; and

D. All other relief which this Honorable Court deems equitable and just.

***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***

Dated: October 4, 2019

/s/ *Jacqueline Greene*
Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
Terry Gilbert (0021948)
FRIEDMAN & GILBERT
55 Public Square, Suite 1055
Cleveland, Ohio 44113
P (216) 241-1430
F (216) 621-0427
jgreene@f-glaw.com
sgelsomino@f-glaw.com
tgilbert@f-glaw.com

Marcus Sidoti (0077476)
FRIEDMAN & GILBERT
The Terminal Tower
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T 216-357-3305
F 216-696-1411
marcus@jordansidoti.com

*Counsel for Plaintiff*