**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ESTATE OF JESUS MALAVE MORALES,** Deceased,<br>**by John R. Harrison, Administrator,**<br><br>   Plaintiff,<br><br>-vs-<br><br>**CITY OF CLEVELAND, et al.**<br><br>   Defendants. | Case No. 1:19-cv-02328<br><br>Judge Christopher A. Boyko<br>Magistrate Judge William H. Baughman, Jr. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF CLEVELAND'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Plaintiff, through counsel, opposes Defendant City of Cleveland's Motion for Judgment on the Pleadings (Dkt. 10). For the reasons stated below, Plaintiff asks the Court to deny City's Motion in its entirety.

**I. Procedural History**

Plaintiff filed this case on October 4, 2019. (*See* Complaint, Dkt. 1.) The waiver of service of summons with respect to Defendant City of Cleveland was filed on October 16, 2019. (Dkt. 3.) On December 31, 2019, the Court granted Plaintiff's unopposed motion for an extension of time for service of process, allowing Plaintiff until March 2, 2020 to serve the individual defendants in the case. The Parties' Planning Report, filed February 12, 2020 (Dkt. 15), reflects Plaintiff's and the City's agreement to recommend a cut-off date for amending the pleadings or adding parties to be set for April 30, 2020.

On January 3, 2020, Defendant City of Cleveland filed its Motion for Judgment on the Pleadings (Dkt. 10), seeking to dismiss Plaintiff's claims against the City. The City's Motion seeks judgment on the pleadings on the following grounds:

(1) The City argues that Plaintiff's Second Claim for Relief (ADA and § 504 Claim) "does not allege that Plaintiff's decedent was denied benefits 'by reason of' his disability" and "fails to put the City on notice of the benefits allegedly denied" (Motion at PageID#53);

(2) The City argues that Plaintiff's Third Claim for Relief (¶1983 *Monell* Claim) "does not make the minimum required allegations to state a plausible claim that there was a policy or custom that caused Plaintiff's alleged harm" (Motion at PageID#53);

(3) The City argues that Plaintiff's Fifth Claim for Relief (Wrongful Death) and Plaintiff's Sixth Claim for Relief (Survivorship Action) "do not involve any of the five exceptions to the grant of political subdivision immunity in R.C. § 2744.02" (Motion at PageID#53);

(4) The City argues that it is "immune from Plaintiff's untitled claim for conspiracy," or is protected by the intracorporate conspiracy doctrine (Motion at PageID#54); and

(5) The City argues that "under R.C. §2744.05(A) and well-settled case law interpreting 42 U.S.C. § 1983, Plaintiff cannot recover punitive or exemplary damages against the City, such that Plaintiff's prayer for relief seeking punitive damages and attorneys' fees should be dismissed as to the City if any of the causes of action survive."

Plaintiff opposes the City's arguments as stated below, and asks the Court to deny the City's Motion in its entirety.

**II.      Plaintiff's Second Claim for Relief (ADA and § 504 Claim) Do Allege that Plaintiff's Decedent Was Denied Benefits by Reason of His Disability and the City Is on Notice of the Benefits Denied.**

The City's Motion argues that Plaintiff's Second Claim for Relief (ADA and § 504 Claim) does not allege that Jesus Malave Morales was denied benefits by reason of his disability and that Plaintiff's Complaint does not put the City on notice of the benefits denied. (Motion at PageID#53.) The language of Plaintiff's Complaint makes clear that the City's argument is unfounded.

2

The facts contained in Plaintiff's Complaint sufficiently allege that Jesus Malave Morales was handicapped under the Rehabilitation Act and a qualified person with a disability under the ADA. Morales was in acute distress and suicidal, which satisfies the definition in 42 U.S.C. § 12102(2)(C) of "disability" as an individual who has (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) is regarded as having such an impairment. The City does not allege that Plaintiff's Complaint does not plead sufficiently that Jesus Malave Morales was a qualified individual with a disability under the ADA or a handicapped person under the Rehabilitation Act.

Further, the City admits that it is a public entity within the meaning of the Americans with Disabilities Act (ADA). (Answer, Dkt. 9, at ¶16.)

Instead, the City's arguments are based on the Complaint's alleged failure to state that "Morales was denied benefits because of his disability, and otherwise fails to make specific enough allegations to put the City on notice of the Claim against it." (Brief in Support at PageID#58.)

But Plaintiff's Complaint does show that the City is liable for actions taken because of Plaintiff's disability: Plaintiff's Complaint specifically states that "Defendants failed and refused to reasonably accommodate Jesus Malave Morales' mental disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate his disability, in violation of Title II of the ADA and/or §504, when he was in their custody." (Complaint at ¶91.) The Complaint is replete with allegations about the City being on notice of Morales' acute crisis and suicidal ideation from the time of booking until the time other prisoners screamed out for help, and through the moment that help was not immediately summoned upon discovery of his attempted suicide. The Complaint further states that "Defendants' failures cost Jesus Malave Morales his life, and the violations of the ADA and/or §504 are the proximate cause of his death and the resulting damage to his estate." (Complaint at ¶92.) The City was on notice of

his disability. The City had an obligation under the ADA and Rehabilitation Act to provide reasonable accommodations in response to his disabilities. The City's failure to provide those reasonable accommodations constitutes de facto discrimination against Morales—necessarily because of his disability. The City ultimately denied Morales of safety within the Jail through these discriminatory practices and acts via refusal to accommodate his needs.

Further, Plaintiff alleges that the Cleveland Jail is a facility, and its operation comprised a program and service, for §504 and Title II purposes. (Complaint at ¶90.) Contrary to the City's arguments, Plaintiff's Complaint specifically alleges that Morales was denied programs and services in the Jail—to which he was entitled, *inter alia*:

- Supervision by corrections officers and service of health care providers who were properly trained, supervised, disciplined, transferred, monitored, counseled and otherwise controlled (Complaint at ¶97(a));

- Appropriate and timely identification of Morales' serious mental health medical issues (Complaint at ¶97(a));

- Appropriate recognition of Morales' suicidal tendencies, despite clear indications of such tendencies (Complaint at ¶97(b));

- Timely referral for appropriate mental health medical services, despite Morales' clear indications of serious need (Complaint at ¶97(c));

- Placement on suicide watch even though Morales was known to be suicidal and presenting evidence of suicidal ideation (Complaint at ¶97(d));

- Adequately and timely communication of critical information regarding Morales' mental health, including risk of suicide (Complaint at ¶97(e));

- Provision of adequate care, treatment and/or supervision for Morales' suicidal state (Complaint at ¶97(f));

- Provision of adequate preventative measures upon discovery of Morales' suicidal tendencies (Complaint at ¶97(g));

- Correcting, discipline for, and following up on deficiencies noted in Morales' care, treatment and/or supervision (Complaint at ¶97(h));

- Provision of services from corrections officers, health care providers, and other employees who were properly trained in how to intake, screen, identify, refer and/or handle Morales' mental health issues, avoiding exacerbation of Morales' symptoms, and managing and controlling Morales' mental and physical health (Complaint at ¶98).

It is disingenuous for the City to argue that it is not on notice of Plaintiff's claim against it under the ADA and Rehabilitation Act. The City's motion should be denied with respect to this Claim for Relief.

**III.　Plaintiff's Third Claim for Relief (¶1983 *Monell* Claim) Is Sufficiently Pled and States a Plausible Claim that Municipal Policies, Practices, and/or Customs Caused Plaintiff's Harm.**

For a local government to be liable under 42 U.S.C. § 1983, a plaintiff must show that the government's policy or custom was the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989). Plaintiff need not cite to a specific promulgated policy with a number or title assigned by the City to establish liability: a "policy or custom does not have to be written law; it can be created 'by those whose edicts or acts may fairly be said to represent official policy.'" *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010).

Nonetheless, the City's Motion argues that Plaintiff's Third Claim for Relief (¶1983 *Monell* Claim) "does not make the minimum required allegations to state a plausible claim that there was a policy or custom that caused Plaintiff's alleged harm." (Motion at PageID#53.) This argument is without merit. Plaintiff sufficiently pleads the existence of policies and customs that were the moving force behind Plaintiff's injuries here, alleging, *inter alia*, that:

- The City is responsible for the policies, practices, and customs of the Jail and for ensuring that the Jail is in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care. (Complaint at ¶2, 20.)

- The City of Cleveland is responsible for ensuring that its staff, including Jail staff, are adequately trained and supervised to carry out their duties in a way that does not violate the fundamental rights of prisoners. (Complaint at ¶2, 20.)

- Defendants' conduct was undertaken pursuant to one or more interrelated de facto as well as explicit policies, practices and/or customs of the City, its Jail, and its agents and/or officials. (Complaint at ¶96.)

- The City—at the level of official policy, practice, *and* custom—authorized, tolerated and institutionalized practices and ratified illegal conduct described in the complaint. (Complaint at ¶97.)

- The City, its Jail, and agents/officials, maintained specifically enumerated policies, practices, and customs which include, *inter alia*:

    a) failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control corrections officers and health care providers; failing to appropriately and timely identify serious mental health medical issues and needs of prisoners like Jesus Malave Morales;

    b) failing to appropriately recognize suicidal tendencies in prisoners, like Jesus Malave Morales, despite clear indications of such tendencies;

    c) failing to timely refer prisoners like Jesus Malave Morales for appropriate mental health medical services, despite clear indications of serious need;

    d) failing to place prisoners like Jesus Malave Morales on suicide watch even though known to be suicidal or presenting evidence of suicidal ideation;

    e) failing and refusing to adequately and timely communicate critical information regarding mental health, including risk of suicide;

    f) failing and refusing to provide adequate care, treatment and/or supervision for potentially suicidal prisoners like Jesus Malave Morales;

    g) failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of prisoners like Jesus Malave Morales;

    h) failing and refusing to correct, discipline, and follow up on deficiencies noted in care, treatment and/or supervision of prisoners; and/or

    i) possessing knowledge of deficiencies in the policies, practices, customs and procedures concerning prisoners, and approving and/or deliberately turning a blind eye to these deficiencies.

    (Complaint at ¶97.)

- The City's corrections officers, corrections officers, health care providers, and other employees are not properly trained in how to intake, screen, identify, refer and/or handle prisoners with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of prisoners. (Complaint at ¶98.)

- The City's interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged, inter alia, the failure to adequately observe prisoners to identify problematic behavior and interrupt any suicide attempt, the failure to adequately screen prisoners for mental health status and suicidal tendencies, the failure to provide preventative health care to avoid suicide, and the failure to provide adequate resuscitation equipment and training. (Complaint at ¶99.)

- The constitutional violations and damages to Jesus Malave Morales were caused by the unofficial and/or official, tacit and/or expressed, and otherwise unconstitutional policies of authorized policy makers of the City, and those policy makers deliberately ignored subjecting prisoners to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, and deliberately failed to supervise and control corrections officers and health care providers so as to prevent violations of prisoners' rights. (Complaint at ¶100.)

- These interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged the Defendants to commit the acts described in Plaintiff's Complaint against Jesus Malave Morales and therefore, these interrelated policies, practices and customs were the direct and proximate causes of Morales' constitutional violations, and resulting in his injuries. (Complaint at ¶101.)

These are not mere "'formulaic recitation of the elements' of a constitutional claim," nor "conclusory" or "bare" allegations. (Brief in Support at PageID#61.) Instead, these policies and customs reflect very specific allegations of patterns and practices that expressly contemplate conduct of Jail staff beyond the defendant officers named in Plaintiff's Complaint and treatment of prisoners other than Jesus Malave Morales. Further, these specifically enumerated policies and customs have an obvious, clear causal connection to the death of Jesus Malave Morales by attempted suicide in his cell under the facts in Plaintiff's Complaint.

Plaintiff's Complaint clearly includes a thorough recitation of facts underlying Plaintiff's *Monell* claim the City, including allegations concerning *patterns of misconduct* which are stated with significant detail and particularity. The cases cited by the City in support of their attempt to dismiss the *Monell* claim involved complaints with sparse detail, with nothing like the explanation of and obvious causal connection between Morales' death and the enumerated list of policies and

7

customs contained in Plaintiff's Complaint. Neither *Lewis v. City of Cleveland, et al.* nor *Bickerstaff v. Lucarelli, et al.* have any application here.[1]

However, had Plaintiff opted not to allege the existence of a pattern or practice as he did in this case, Plaintiff's Complaint is still sufficiently pled to establish the City's liability under *Monell*. Single incidents can indeed give rise to a municipality's liability under *Monell*: "[a] single decision can constitute a policy, if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). "Where action is directed by those who establish government policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)

Concerning failure-to-train liability (which are a subset of *Monell* policy claims), a single incident of harm (without a pattern of misconduct) is sufficient to establish liability where the need for more or different training is so obvious that a plaintiff's injury is a "highly predictable consequence" of deficient training. *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011); *Canton*, 489 U.S. at 390; *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 396, 409 (1997);

---

[1] In *Lewis,* the court granted the defendants' motion to dismiss because the plaintiff made mere conclusory statements that "because Plaintiff allegedly was handled with excessive force and wrongfully arrested, there must be a lack of supervision or training that led to such treatment." The plaintiff made these conclusory statements without offering any "facts to even suggest that the City had a policy or custom of failing to train or supervise its employees," and failed to "plead more facts than those that constitute the alleged underlying constitutional violation." Here, Plaintiff alleges specific, enumerated policies and customs of the City, above and beyond the underlying constitutional violations. *Lewis* does not apply here. In *Bickerstaff*, the Court granted the defendants' motion to dismiss claims against the City because the plaintiff's allegations did not "amount to a municipal policy, and even if her allegations did, Bickerstaff fail[ed] to assert a direct causal link between the alleged municipal policy or custom and her alleged constitutional injury." Unlike the *Bickerstaff* complaint, Plaintiff's Complaint contains allegations about specific municipal policies and customs, allegations that those policies and customs indeed caused Plaintiff's injuries. The causal link between the policies and customs and the injuries at issue is obvious and expressly stated in Plaintiff's Complaint. *Bickerstaff* also does not apply here.

*Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015). "Liability under this theory depends on the 'likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Brown*, 520 U.S. at 409-10.

Likewise, ratification claims (which are also a subset of *Monell* policy claims) can be established by demonstrating that an official with final decision-making authority—whose actions are therefore attributable to the municipality—ratified illegal actions. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). In ratification theory cases, "even if no pattern of insufficient investigation or discipline is established, a municipality may still incur liability under a ratification theory." *Sweat v. Butler*, 90 F. Supp. 3d 773, 785 (W.D. Tenn. 2015), citing *Burgess v. Fischer* (6th Cir 2013).

The question of whether or not Plaintiff will have proven the specifically enumerated policies and customs, or whether disputes of material fact exist concerning the existence of these policies or customs, must be answered at summary judgment or trial—and not now, through the pleadings alone. Defendants' Motion must be denied with respect to Plaintiff's *Monell* claim.

**IV. Plaintiff's Fifth Claim for Relief (Wrongful Death) and Plaintiff's Sixth Claim for Relief (Survivorship Action) Are Sufficiently Pled and the City Is Not Entitled to Ohio Rev. Code § 2744 Immunity.**

Plaintiff's wrongful death claim and survivorship action are properly pled and must survive the City's Motion. The City argues that these claims must be dismissed because none of the five exceptions to political subdivision immunity under Ohio law apply in this case. The City's arguments are without merit.

As a preliminary matter, leaving the issue of the City's claim of immunity aside for a moment, under Ohio law, employees of political subdivisions are not entitled to immunity under Ohio Rev. Code § 2744.03(A)(6) where "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Plaintiff alleges that the

9

conduct of the individual defendants was described in the Complaint rises to the level of willful, wanton, and/or reckless conduct; therefore, they are not immune from suit. (*See* Plaintiff's Fourth Claim for Relief, ¶¶103-107.) Further, the City's indemnification obligations under the Ohio Revised Code[2] for the conduct of its employees—the individual defendants—apply with respect to all of Plaintiff's claims in this case. The City is not entitled to avoid liability or indemnification for Plaintiff's wrongful death and survivorship claims.

Turning to the City's immunity claim, Plaintiff generally agrees with the City's presentation of how political subdivision immunity functions under Ohio Rev. Code § 2744, including the City's description of a three-tiered analysis. Plaintiff agrees that the City is a political subdivision, and is subject to the general rule that political subdivisions are largely not liable in damages pursuant to Ohio Rev. Code § 2744.02 (A)(1) (the first tier). Therefore, Plaintiff agrees that the City is entitled, at the starting point, to the presumption of immunity. Plaintiff also agrees that § 2744.02(B) identifies exceptions to this immunity (the second tier). Plaintiff further agrees that if one of § 2744.02(B)'s exceptions apply, then, under some circumstances, Ohio Rev. Code § 2744.03 is relevant to whether immunity is re-imposed (the third tier).

Plaintiff's Complaint makes clear that the City is stripped of immunity under the second-tier analysis. Ohio Rev. Code §2744.02(B)(4) states that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs *within or on the grounds of*, and is *due to physical defects within or on the grounds of*, buildings that are used in connection with the performance of a governmental function…"

---

[2] Ohio Rev. Code § 2744.07(A)(2) obligates the City of Cleveland "to indemnify and hold harmless an employee in the amount of any judgment … that is obtained against the employee in a state or federal court … and that is for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of employment or official responsibilities."

(emphasis added). The physical defect exception applies where "the instrumentality that caused [the plaintiff's] injury did not operate as intended due to a perceivable condition or if the instrumentality contained a perceivable imperfection that impaired its worth or utility." *Canidate v. Cuyahoga Metro. Hous. Auth.*, 2015-Ohio-880, ¶ 19 (Ct. App.), citing *Jones v. Del. City School Dist. Bd. of Edn.,* 5th Dist. Delware No. 2013 CAE 01 0009, 2013-Ohio-3907. Political subdivisions are not entitled to immunity where a jury could find it reasonably foreseeable that political subdivision's failure to maintain or inspect the conditions on the premises could result in injury to people frequently in the area. *See*, e.g., *Dickerson v. CMHA*, 2014 Ohio App. LEXIS 4589 (Ohio Ct. App. 2014).

Here, Jesus Malave Morales died on the grounds of the City's Jail. His death was due in part to not being visible to correctional staff—who failed to make rounds to observe him in his cell, and who failed to respond to the screams of other prisoners. Likewise, his death was due in part to the fact that the cell he was in contained open bars, to which he was able to tie his blanket in his attempt to hang himself. The cellblock set up prevented, without some affirmative action, correctional staff from adequately observing prisoners to identify problematic behavior and interrupt any suicide attempt. This constitutes a physical defect, where the cellblock did not operate as intended due to a perceivable condition or contained a perceivable imperfection that impaired its worth or utility. Further, the open bars to which Jesus Malave Morales was able to tie his blanket constituted a physical defect and rendered his cell inoperable as intended due to a perceivable condition or containing a perceivable imperfection that impaired the cell's worth or utility. These conditions ultimately deprived him of safety within the Jail. Therefore, under the first and second tiers, the City is not entitled to Ohio statutory immunity. Finally, Ohio Rev. Code § 2744.03 does

11

not reimpose immunity here: none of the defenses or immunities listed in Ohio Rev. Code § 2744.03(A)(1)-(5) or (7) apply here.

The City is not entitled to Ohio statutory immunity under the facts pled in Plaintiff's Complaint, and the City's claims of immunity do not affect its indemnification obligations for its employees. Further, the City is responsible for any awards for wrongful death or survivorship damages tied to their liability for Plaintiff's *Monell* claim. The City's Motion must be denied with respect to Plaintiff's Fifth and Sixth Claims for Relief.

**V.     Plaintiff Does Not Assert a Civil Conspiracy Claim.**

Plaintiff's Complaint does not contain an "untitled" civil conspiracy claim. The City's argument on this issue is moot.

**VI.    Plaintiff Is Entitled to Recover Attorney Fees and Costs from the City.**

Plaintiff's Complaint puts the City on notice of Plaintiff's intent to seek attorney fees in this case should he become the prevailing party at the conclusion of this litigation. Notwithstanding the City's indemnification obligations for damages awarded against the individual defendants in this case (*see* Footnote 2, *supra*), the City mistakenly argues that Plaintiff is not entitled to recover attorney fees from the City.

Plaintiff is indeed entitled to recover attorney fees and costs from the City. A prevailing plaintiff in a case brought pursuant to the Civil Rights Act (42 U.S.C. § 1983) is entitled to an award of attorneys' fees and costs under the Civil Rights Attorneys' Fees Award Act of 1976 (42 U.S.C. § 1988). Section 1988 provides, in relevant part: "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...." 42 U.S.C. § 1988(b). Absent special circumstances, courts must grant fees to the prevailing party. *See Deja Vu v. Metro. Gov't of Nashville &Davidson Cty., Tennessee*, 421 F.3d 417, 420 (6th Cir. 2005) ("Although

'may allow' has a permissive ring to it, the Supreme Court has read [the awarding of attorney fees] as mandatory where the plaintiff prevails and special circumstances are absent."); *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 272 (6th Cir. 1991) ("[I]n the absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff.") (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)).

The purpose of Section 1988 "is to ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir.1998). *See also Martin v. Heckler,* 773 F.2d 1145, 1150-1151 (11th Cir. 1985) (*en banc*) ("A primary congressional purpose in enacting section 1988 was to encourage worthwhile litigation that is necessary to protect civil rights.").

While the City may litigate vigorously, it must bear the resulting fees at the conclusion of the litigation should Plaintiff prevail. *Serrano v. Unruh*, 32 Cal.3d 621, 632 (1982), quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*). Under federal law, successful plaintiffs are entitled to be fully compensated for all of their reasonable efforts at full market value. *See Blum v. Stenson,* 465 U.S. 886, 893 (1984) (fee awards must make civil rights cases as financially attractive as "'other types of equally complex ...litigation.'".)

The issue of attorney fees and costs must be addressed at the conclusion of this litigation. The City is not entitled to discharge its obligations to pay attorney fees and costs at this stage of the proceedings.

**VII.    In the Alternative, Plaintiff Asks the Court for Leave to Amend His Complaint to Address Any Deficiencies.**

Should the Court find any of the City's arguments meritorious based on the language of Plaintiff's operative Complaint, Plaintiff asks that the Court grant leave and a reasonable amount

13

of time to amend his complaint. At this time, discovery has not yet commenced. The Case Management Conference is scheduled for Wednesday, February 19, 2020. The Parties have worked together to allow Plaintiff the opportunity to serve the individual defendants, and those defendants have not yet been served. The Parties' Planning Report, filed February 12, 2020 (Dkt. 15), reflects Plaintiff's and the City's agreement to recommend a cut-off date for amending the pleadings or adding parties to be set for April 30, 2020. No party will suffer prejudice if the Court grants Plaintiff leave to file an amended complaint.

## CONCLUSION

For the reasons stated above, Plaintiff asks the Court to deny the City's Motion for Judgment on the Pleadings in its entirety, or, in the alternative, Plaintiff asks for leave and reasonable time to amend his Complaint.

Respectfully submitted,

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
Terry Gilbert (0021948)
FRIEDMAN & GILBERT
50 Public Square, Suite 1900
Cleveland, Ohio 44113
P (216) 241-1430
F (216) 621-0427
jgreene@f-glaw.com
sgelsomino@f-glaw.com
marcus@f-glaw.com
tgilbert@f-glaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 17, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      */s/ Jacqueline Greene*
      JACQUELINE GREENE
      *One of the Attorneys for Plaintiff*