UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN B. HARRISON, | ) | CASE NO. 1:19CV2328 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant City of Cleveland's Motion for Judgment on the Pleadings. (ECF # 10).  For the following reasons, the Court grants, in part, and denies, in part, Defendant's Motion.

According to Plaintiff's Complaint, Plaintiff's decedent, Jesus Malave Morales ("Morales") was jailed on October 5, 2017.  When Morales arrived at the jail, staff failed to conduct adequate medical and mental health screenings.  Shortly thereafter, Morales hanged himself in his cell and died six days later.   Defendants Alan Furtado ("Furtado") and Elizabeth Hester ("Hester") were the supervisors on duty when Morales arrived at the jail.

Defendants Kristina Vargo ("Vargo") and Charles Stephens, Jr. ("Stephens"), along with Does 1-10, completed an abbreviated booking and screening process, resulting in their failure to properly screen Morales for medical or mental health histories.  They also failed to capture his acute distress and suicidal ideation and failed to document their own observations of Morales.

This was a serious failure given Morales' history of untreated mental health issues and suicide attempts.

Morales interacted at his booking with Defendant Charles Brown ("Brown"), who failed to document Morales' severe psychological symptoms as did Defendant Timothy Holt ("Holt"), who escorted Morales from the cell phone cell to cell #8.  Furtado and Hester failed to document or disclose Morales' psychological symptoms to the next shift's supervisors.

Prisoners who witnessed Morales' suicide screamed for the guards to come aid Morales when they saw him tie a sheet around his neck but the guards did not immediately move to stop Morales.  Defendants Brown and Kevin Boll ("Boll") delayed giving life saving aid.  Once they arrived at his cell and found him unconscious, they attempted to revive him with a defibrilator but the device failed to work properly.

Instead of preserving as evidence the sheet Morales used to hang himself, the guards had it taken to laundry.  After the fact, Defendants conspired to give false, incomplete and misleading reports of the incident to cover up their misconduct.

Plaintiff's Complaint alleges at Count One a violation of Morales' Fifth and Fourteenth Amendment Due Process and Equal Protection rights under the United States Constitution against Defendants Vargo, Stephens, Brown, Holt, Boll, Furtado, Hester, Stottner, Raucher and Does 1-10, due to Defendants' deliberate indifference to Morales' serious medical needs.

Count Two alleges claims against the City of Cleveland for failure to provide Morales reasonable accommodation for his mental disabilities in violation of the Americans with Disabilities Act ("ADA') and Section 504 of the Rehabilitation Act.

Count Three alleges *Monell* claims against City of Cleveland for its failure to train,

supervise and discipline its agents; failure to recognize Morales' suicidal tendencies; failure to timely refer Morales for his medical needs and failure to place him on suicide watch.   Plaintiff also alleges the constitutional violations were the result of the City of Cleveland's customs, practices or policies.

Count Four alleges an Ohio state law claim for Negligence, Willful, Wanton and Reckless Conduct against the corrections officer  defendants.

Count Five alleges an Ohio state law claim for Wrongful Death pursuant  to  O.R.C.  § 2125.02 against all Defendants.

Count Six alleges an Ohio state law claim for Survivorship against all Defendants. Plaintiff seeks  compensatory  damages, punitive damages, attorneys' fees and costs and unspecified additional relief.

**<u>Defendant's Motion</u>**

In its Motion for Judgment on the Pleadings, Defendant City of Cleveland contends it is entitled to judgment as a matter of law on all claims against it which are Plaintiff's Second Claim for Relief (ADA and § 504 Claim); Third Claim for Relief (§ 1983 *Monell* claim); Fifth  Claim for  Relief  (Wrongful  Death) and Sixth  Claim for  Relief  (Survivorship Action); and moves on an untitled claim for civil conspiracy.

According to Defendant, Plaintiff's ADA and Section 504 claim fails to allege that Morales was  denied benefits "by reason of" his disability and it fails to put Defendant on notice of the benefits allegedly denied.   Furthermore, Plaintiff's *Monell* claim fails to allege sufficient facts to make it plausible under federal pleading standards.  Plaintiff's Wrongful Death and Survivorship claims do not fall under one of the exceptions to Ohio's political subdivision

immunity statute.   Defendant further contends it is immune from a civil conspiracy claim and is further entitled to judgment on the claim under the intracorporate conspiracy doctrine.

Lastly, Defendant contends Plaintiff is not entitled to punitive or exemplary damages against it under Ohio law.

## LAW AND ANALYSIS

### Standard of Review

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Almendares v. Palmer*, 284 F.Supp. 2d 799, 802 (N.D. Ohio 2003).  Therefore, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether  "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'" *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), *quoting Bell Atlantic Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974 (2007).  Claims alleged in the complaint must be "plausible," not merely "conceivable."  *Id.*  Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  A Rule 12(c) motion "is granted when ***no material issue of fact*** exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added).  A written instrument attached to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P.

10(c).  "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

**ADA and Rehabilitation Act**

"The Americans with Disabilities Act and the Rehabilitation Act combat discrimination against disabled individuals.  Title II of the Americans with Disabilities Act provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"  *Gohl v. Livonia Pub. Sch. Sch. Dist.,* 836 F.3d 672, 681 (6th Cir. 2016) quoting 42 U.S.C. § 12132.  "Section 504 of the Rehabilitation Act provides that a qualified individual with a disability shall not, 'solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"  *Gohl*, 836 F.3d at 681 quoting 29 U.S.C. § 794(a).

To establish a prima facie case of discrimination a plaintiff must demonstrate: (1) he or she "is disabled under the statutes, (2) is 'otherwise qualified' for participation in the program, and (3) is being excluded from participation in, denied the benefits of, or subjected to discrimination because of his disability or handicap, and (4) (for the Rehabilitation Act) that the program receives federal financial assistance."  *Gohl,* 836 F.3d 682.  "Both the Americans with Disabilities Act and the Rehabilitation Act require the challenged discrimination to occur because of disability, which is another way of saying that the plaintiff must establish a but-for relationship between the protested act and the individual's disability."  *Id.* citing  *Univ. of Tex.*

*Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 133 S.Ct. 2517, 2527–28 (2013); *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–15 (6th Cir. 2012) (en banc).  "The Americans with Disabilities Act requires the plaintiff to present sufficiently "significant" evidence of animus toward the disabled that is a but-for cause of the discriminatory behavior.  The Rehabilitation Act sets the higher bar, requiring plaintiffs to show that the defendant's acts were done "solely by reason of" the disability." *Gohl*,  836 F.3d at 682.  "Apart from [§ 504's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same." *S.S. v. E. Kentucky Univ.,* 532 F.3d 445, 452–53 (6th Cir. 2008 quoting *Weixel v. Bd. of Educ. of N.Y.,* 287 F.3d 138, 146 n. 6 (2d Cir.2002).  See also *Thompson v. Williamson County,* 219 F.3d 555, 557 n. 3 (6th Cir.2000) ( recognizing that ADA and § 504 claims may be analyzed together because both statutes provide the same remedies, procedures, and rights).

The parties do not dispute for purposes of this Motion that Morales was disabled as defined under the statutes, nor do they dispute Defendant received federal funds.  According to Defendant, Plaintiff's claims for ADA and Rehabilitation Act violations fail as a matter of law because Plaintiff's Complaint fails to allege Morales was denied a benefit due to his disability.  Moreover, these claims fail because they fail to allege sufficient facts to support the claim.  In particular, the Complaint fails to allege what benefits Morales was denied but only makes general assertions that do not put Defendant on notice of the particular claim.

Plaintiff's Complaint alleges the following ADA and RA claim.

91.  Defendants failed and refused to reasonably accommodate Jesus Malave Morales' mental disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate his disability, in violation of Title II of the ADA and/or §504, when he was in

their custody.

A review of Plaintiff's Complaint reveals Plaintiff does not allege that Morales was discriminated against, or that he was unable to participate in or receive the benefit of a service, program, or activity available to other inmates by reason of that disability.  Instead, Plaintiff alleges that Morales did not receive necessary medical treatment, and he alleges that Defendant's failure to diagnose or treat him was motivated by a desire to punish him for exercising his right to petition government.

In analyzing Plaintiff's ADA and Rehabilitation Act failure to accommodate claim, the Court holds that it fails to plausibly allege sufficient facts to support such a claim.  As Defendant points out, the claim alleges a number of purported failings: to adequately screen Morales, to document his condition, to place on suicide watch, to monitor and to contact appropriate medical personnel.  However, nowhere does Plaintiff's claim allege these denials were due to Morales' disability.  Instead, Plaintiff's claims concern the failures to diagnose and treat Morales.  This is fatal to Plaintiff's claim.

"Neither the ADA nor the RA provide a cause of action for inadequate medical care." *Larson v. Eppinger,* No. 2:20-CV-4997, 2020 WL 6392439, at *6 (S.D. Ohio Nov. 2, 2020), citing *Watson v. Mohr,* 2:17-cv-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017). ("finding that a plaintiff failed to state a claim for relief under the ADA for the denial of medical treatment where the claim was merely an Eighth Amendment deliberate indifference claim in another statutory guise, noting that '[n]either medical treatment decisions nor medical malpractice ... may form the basis of a claim under the ADA'").  See also *Simmons v. Navajo Cty.,* 609 F.3d 1011, 1022 (9th Cir. 2010). ("The ADA prohibits discrimination because of

disability, not inadequate treatment for disability."); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996).  ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.... The ADA does not create a remedy for medical malpractice.").

Claims that person was not properly treated due to a disability rather than mistreated due to a disability are not cognizable under the ADA and Rehabilitation Act but instead fall under the Eighth Amendment.  See *Vick v. Core Civic*, 329 F. Supp. 3d 426, 444 (M.D. Tenn. 2018). ("Indeed, courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment but do not allege that the inmate was treated differently because of his or her disability.").  *Id* at 443.

Because Plaintiff does not allege Defendant denied him benefits due to his disability, does not allege facts demonstrating he was treated differently than non-disabled detainees and because his claims go to the adequacy of his diagnosis and treatment, the Court grants Defendant's Motion and dismisses Plaintiff's ADA and Rehabilitation Act claims.

### *Monell* **Claims**

A city or municipality may only be held liable for the constitutional violations of its employees under 42 U.S.C. § 1983 if those actions are the result of a practice, policy, or custom of the municipality itself.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "There are four types of municipal action that, if they cause the underlying constitutional violation, can establish liability under a *Monell* claim:  1) legislative enactments or official policy; 2) actions by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance of rights violations."  *France v. Lucas*, No.

1:07CV3519, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), aff'd, 836 F.3d 612 (6th Cir.

2016).  "A municipality may be liable under §1983 for failure to train its employees, but only

where such failure reflects a deliberate or conscious choice." *City of Canton v. Harris*, 489 U.S.

378 (1989).

Plaintiff's Complaint alleges the following *Monell* claim:

> a) failing to properly train, supervise, discipline, transfer, monitor, counsel and
> otherwise control corrections officers and health care providers; failing to
> appropriately  and timely identify serious mental health medical issues and needs of
> prisoners like Jesus Malave Morales;
>
> b) failing to appropriately recognize suicidal tendencies in prisoners, like Jesus
> Malave Morales, despite clear indications of such tendencies;
>
> c) failing to timely refer prisoners like Jesus Malave Morales for appropriate mental
> health medical services, despite clear indications of serious need;
>
> d) failing to place prisoners like Jesus Malave Morales on suicide watch even though
> known to be suicidal or presenting evidence of suicidal ideation;
>
> e) failing and refusing to adequately and timely communicate critical information
> regarding mental health, including risk of suicide;
>
> f) failing and refusing to provide adequate care, treatment and/or supervision for
> potentially suicidal prisoners like Jesus Malave Morales;
>
> g) failing and refusing to take adequate preventative measures upon discovery of
> suicidal tendencies of prisoners like Jesus Malave Morales;
>
> h) failing and refusing to correct, discipline, and follow up on deficiencies noted in care,

9

treatment and/or supervision of prisoners; and/or

 i) possessing knowledge of deficiencies in the policies, practices, customs and procedures concerning prisoners, and approving and/or deliberately turning a blind eye to these deficiencies.

98.  In particular, corrections officers, health care providers,  and other employees are not properly trained in how to intake, screen, identify, refer and/or handle prisoners with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of prisoners.

According to Defendant, Plaintiff's *Monell* claim fails as a matter of law because it does not sufficiently allege a policy or practice that violated Morales' constitutional rights.  Defendant contends one instance cannot support a pattern or practice claim.

Plaintiff responds that the Complaint sufficiently describes conduct supporting its *Monell* claim, including the failure to train officers on how to intake, screen, identify, refer and/or handle prisoners with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of prisoners.  Plaintiff also asserts "[a] single decision can constitute a policy, if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'"  *Flagg  v.  City  of  Detroit,* 715 F.3d 165, 174 (6th Cir. 2013). "Where action is directed by those who establish government policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  "A single incident of harm (without a

pattern of misconduct) is sufficient to establish liability where the need for more or different training is so obvious that a plaintiff's injury is a "highly predictable consequence" of deficient training."  *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011

On a motion brought under Fed. R. Civ. P 12(c), the court's role is to determine if the Complaint alleges a plausible claim.  Here, the Court holds applicable federal caselaw supports the conclusion that a single incident can support a *Monell* claim for a custom or practice that violates a plaintiff's constitutional rights as well as failure to train which results in the same violations.  Furthermore, Plaintiff's Complaint adequately describes the conduct at issue regarding Defendants' deliberate indifference, failures to document, failures to adequately screen and failure to timely contact medical professionals that violated Morales' constitutional rights and alleges such conduct was due to inadequate training or Defendant's customs and/or policies. At this stage of the proceedings, these are sufficient allegations to support a *Monell* claim. Because the allegations in Plaintiff's Complaint assert facts that make his *Monell* claim plausible, the Court denies Defendant's Motion for Judgment on Plaintiff's *Monell* claim.

**Wrongful Death/ Survivorship Claim**

Plaintiff's Fourth Claim for Relief alleges Wrongful Death under Ohio law against Defendant.  The Complaint alleges, "The wrongful death of Jesus Malave Morales was proximately caused by the neglect, default, and/or willful, wanton, and/or reckless conduct of the Defendants."  (Complaint ¶110).

Plaintiff's Fifth Claim for Relief alleges a Survivorship action as follows:

Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, Jesus Malave Morales was caused to suffer mental anguish and conscious

11

physical pain and suffering prior to his death, for which compensation is sought.

(Complaint ¶ 114).

Defendant asserts it is entitled to judgment on both these claims because Ohio's statutory immunity statute, O.R.C. § 2744.02, provides a municipality immunity for negligent acts of its employees and none of the statutory exceptions apply.

Plaintiff responds that employees of a municipality are not immune if their negligent act was the result of malicious or wanton conduct or bad faith.  Moreover, the Defendant's indemnification obligations to its employees are not protected by the immunity statute.

Plaintiff concedes  that Defendant is a municipality as defined under § 2744.02.and is entitled to a presumption of immunity unless one of the five exceptions applies.  Plaintiff asserts that § 2744.02B(4) applies because:

> Morales died on the grounds of the City's Jail. His death was due in part to not being visible to correctional staff—who failed to make rounds to observe him in his cell, and who failed to respond to the screams of other prisoners.  Likewise, his death was due in part to the fact that the cell he was in contained open bars, to which he was able to tie his blanket in his attempt to hang himself.  The cellblock set up prevented, without some affirmative action, correctional  staff  from adequately  observing  prisoners  to  identify  problematic  behavior  and interrupt any suicide attempt. This constitutes a physical defect,

(Brief in Opposition pg. 11).

Defendant responds that Section B(4) expressly excludes jails from the premises liability exception to immunity under § 2744.02.

O. R. C. 2744.02 reads in pertinent part as follows:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

12

Plaintiff relies solely on exception B(4) which reads:

(4) Except as otherwise provided in section 3746.24 of the Revised Code,
political subdivisions are liable for injury, death, or loss to person or property that
is caused by the negligence of their employees and that occurs within or on the
grounds of, and is due to physical defects within or on the grounds of, buildings
that are used in connection with the performance of a governmental function,
including, but not limited to, office buildings and courthouses, but not including
jails, places of juvenile detention, workhouses, or any other detention facility, as
defined in section 2921.01 of the Revised Code.

However, as Defendant points out, this section expressly exempts municipalities from

liability for deaths that occur on jail property, which is  the case here.  Therefore, Plaintiff has

failed to show an exception to immunity for Defendant under § 2744 and the Court grants

Defendant's Motion for Judgment on Plaintiff's Wrongful Death and Survivorship claims under

Ohio law.

This does not implicate Defendant's indemnification obligations or Defendant's

employees' liability.

## Civil Conspiracy

Defendant asserts it is not liable for civil conspiracy.  Plaintiff states he has asserted no

civil conspiracy claim in his Complaint.  Therefore, the Court finds Plaintiff's Complaint does

not plead a civil conspiracy claim.

## Attorney Fees and Punitive Damages

According to Defendant, O.R.C. § 2744.05 prohibits the award of punitive and exemplary

damages, including attorney fees, against a municipality for violations of state law.

Furthermore, the United States Supreme Court has held that punitive damages may not be

awarded against a municipality for actions brought under 42 U.S.C. § 1983.

Plaintiff does not oppose Defendant's motion on punitive damages and the Court finds

13

Plaintiff has abandoned this claim.  However, Plaintiff does argue it may recover attorney fees under §1983 should it prevail.

The Court agrees with Plaintiff that, should it prevail on its §1983 claim against Defendant, 42 U.S.C. § 1988 expressly permits an award of attorneys fees and costs.  " In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.."

Plaintiff has further requested that, if the Court finds the Complaint is insufficient to withstand a 12(c) motion for judgment on the pleadings, then the Court should grant them leave to amend the Complaint.  However, the Court follows the Sixth Circuit's guidance that a plaintiff must properly file a motion for leave to amend under Fed R. Civ. P. 7(b) and cannot merely place such a request in a brief in opposition.  *Prim Capital Corp. v. Pippen*, No. 1:09CV561, 2009 WL 2579810, *2 (N.D. Ohio Aug. 19, 2009) (citing *Begala v. PNC Bank, Ohio N.A.*, 214 F.3d 776, 784 (6th Cir. 2000).  The policy behind this is that district courts should not stand to "rescue" plaintiffs from the deficiencies of their complaints by offering leave to amend when plaintiffs do not properly request leave.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008).  Similarly here, Defendant has pointed out the deficiencies of Plaintiff's Complaint and Plaintiff should not have the benefit of being rescued by the Court merely because they have now become aware of these deficiencies.  The Court denies the request for leave to amend.

Therefore, for the foregoing reasons, the Court grants, in part Defendant's Motion for Judgment on the Pleadings and dismisses Plaintiff's ADA and Rehabilitation Act, Wrongful

14

Death and Survivorship claim against Defendant and its prayer for punitive damages against

Defendant.  The Court denies Defendant's Motion on Plaintiff's *Monell* claim and prayer for

attorneys fees and costs.

      IT IS SO ORDERED.


Date: November 23, 2020       /s/Christopher A. Boyko
                                CHRISTOPHER A. BOYKO
                                Senior United States District Judge